IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA     ) | |
|                              ) | CRIMINAL ACTION |
|           v.                 ) | |
|                              ) | NO. 04-10299-PBS |
| VALENTIN MARTINEZ,           ) | |
| MANUEL GERMOSEN, and         ) | |
| BENITO GRULLON               ) | |
|                              ) | |

**GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS UNDER THE SPEEDY TRIAL ACT**

### I. Introduction

The United States respectfully opposes VALENTIN MARTINEZ, MANUEL GERMOSEN, and BENITO GRULLON's motion to dismiss for alleged Speedy Trial violations. In this supplemental response, the government responds to defendant's argument that the pending indictment should be dismissed because the government failed to obtain an indictment within thirty days of arrest as required by the Speedy Trial Act, even though did not object to untimeliness of the indictment until months after the indictment. First, the defendants acquiesced and contributed to the pre-indictment delay. Second, the charges in the pending indictment are different from the charges in the complaint and are not subject to dismissal. Third, the delay was reasonable given the number of defendants and complexities of the case, and which was found to be non-prejudicial.

## II. Relevant Background

On February 26, 2004, the government filed a criminal complaint charging both MARTINEZ and GERMOSEN and eighteen other co-defendants with conspiracy to possess with intent to distribute and to distribute quantities of cocaine, in violation of 21 U.S.C. § 846. (See Docket No.1, U.S. v. Martinez et al, 04-MJ-01685-CBS).

On May 1, 2004, the government filed a criminal complaint charging GRULLON with a single count of possession with intent to distribute cocaine on July 30, 2003 in violation of 21 U.S.C. § 841(a)(1). (See Docket No. 1, U.S. v. Grullon, 04-MJ-01731-CBS). On May 3, 2004, GRULLON, MARTINEZ, and GERMOSEN (hereinafter "the defendants") were each arrested pursuant to these separate criminal complaints following a long term DEA investigation.[1] The same day, the defendants made their initial appearance in court and the government moved under 18 U.S.C. § 3142(f) to detain the defendants pending trial.

Judge Swartwood originally scheduled a probable cause/detention hearing for GRULLON on May 5, 2004. The same day, counsel for defendant (Attorney Ronald Segal) entered his appearance and requested a continuance. Judge Swartwood held a probable cause/detention hearing on May 10, 2004. GRULLON was granted conditions of release on May 11, 2004. (See Docket No. 6

---

[1] Accordingly, under Section 3161(b), without including excludable time, the government was required to obtain indictment on or before June 2, 2004.

2

and 7, U.S. v. Grullon).

On May 7, 2004, each of the defendants appeared for a probable cause hearing/detention hearing before Judge Swartwood after which all counsel requested a continuance. Between May 2004 and September 2004, Judge Swartwood held multiple probable cause/detention hearings for some twenty-three defendants. On May 11, 2004, Judge Swartwood held a probable cause/detention hearing for defendants JAVIER ANGEL ROMERO, GERARDO VASSEUR ORTIZ, PHILLIP ASARO, ROBERT RUSCIO, and HOWARD GREENBERG, though only one defendant (ASARO) went forward. All others requested a further continuance. On May 14, 2004, GREENBERG and RUSCIO appeared before Judge Swartwood and were granted conditions of release. On May 26, 2004, Judge Swartwood held a probable cause/detention hearing for defendants JOSE ROSALES, HOWARD GREENBERG, and LUIS DEJESUS after which the matter was taken under advisement. JAVIER ANGEL ROMERO requested a further continuance. The court set a probable cause detention hearing for defendants ROGELIO GARCIA, SILVESTRE LIZARDI, GIOVANNI AVILA, GILBERTO ZAYAS ABDALLAH HAMDAN, VALENTIN MARTINEZ and MANUEL GERMOSEN for June 1, 2004.

On June 1, 2004, Judge Swartwood called the first probable cause/detention hearing as to VALENTIN MARTINEZ and MANUEL GERMOSEN (Kelvin Madera). Both MARTINEZ and GERMOSEN appeared without counsel. On June 21, 2004, the government filed an assented to motion to continue the detention/probable cause hearing due to the

unavailability of defense counsel. (See Docket No. 68). Judge Swartwood granted the motion on June 30, 2004 and reset the hearing for July 15, 2004. (See Docket No. 80).

On July 15, 2004, Judge Swartwood conducted a probable cause/detention hearing as to MARTINEZ and GERMOSEN for the first time. Judge Swartwood continued the issue of detention, however, until August 2, 2004.[2]

On July 22, 2004, the government filed an assented to motion to exclude the period of time from July 21, 2004 to August 26, 2004 as to defendants LUCIANO (ESCOBAR), AGUILAR, SOLORIO, and ESTRADA which Judge Zobel granted the same day. (See Docket No. 1, U.S. v. 04-MBD-10207-RWZ).

On August 2, 2004, Judge Swartwood reconvened the probable cause/detention hearing of MARTINEZ and GERMOSEN. Counsel for GERMOSEN, however, did not appear and requested a continuance until August 30, 2004. On August 4, 2004, Chief Magistrate Swartwood entered an Order of Detention as to VALENTIN MARTINEZ. (See Docket No. 108). On August 29, 2005, the government filed a motion to continue the detention hearing for MANUEL GERMOSEN from August 30, 2004 to September 6, 2004  (See Docket No. 109) which Judge Swartwood granted on August 30, 2004 and reset for September 14, 2004. On September 14, 2004, GERMOSEN assented to an order of pre-

---

[2]The docket sheet does not reveal whether the defendants's, the government or the court *sua sponte* continued the issue of detention, but it also does not indicate that defendants objected to the continuance.

trial detention which was entered on September 15, 2004.

On September 24, 2004, ESTRADA moved to dismiss the pending criminal complaint which charged him and three other defendants (LUCIANO, AGUILAR, and SOLORIO). (See Docket No. 23, U.S. v. Luciano et al.). No other defendants joined this motion or filed any similar type of motions challenging pre-indictment delay. On December 9, 2004, Judge Swartwood granted ESTRADA's motion and dismissed the complaint, but did so without prejudice. (See Docket No. 47).[3]

On October 6, 2004, MARTINEZ, GRULLON, and GERMOSEN were charged in the First Superseding Indictment along with twenty-one other defendants in Criminal No 04-10299-PBS. (See Docket No. 26)[4] On March 23, 2005, the government obtained a Second Superseding Indictment.

### III. Legal Argument

The sole issue for the Court's consideration is whether the Court must dismiss the pending Second Superseding Indictment because the government did not obtain an initial indictment until more than thirty day after was arrested as required under 18 U.S.C. § 3161(b), even though the defendants did not object to the

---

[3] In the court's order, Judge Swartwood noted that Section 3161(h)(7) - providing that time excluded to one co-defendant joined for trial is excludable as to all other defendants - applies to the pre-indictment stage. See Docket No. 47 at 2.

[4] The First Superseding Indictment superseded the indictment returned on September 29, 2004 against four defendants, LUCIANO, AGUILAR, SOLORIO, and ESTRADA. (See Docket No. 24).

5

untimeliness of the indictment until months after the indictment was returned.

In addition to the reasons stated in the government's first opposition, the court should deny the defendants' motion for the following reasons. First, the pre-indictment delay in this case was attributable to not only the number of defendants and complexities of the case, but also the defendants own delay. Second, under the plain language of 18 U.S.C. § 3162(a)(2), defendants' argument to dismiss fails because the offenses charged in the complaint are different from those in the pending indictment. Third, the pre-indictment delay was reasonable and non-prejudicial.

**A.  The Defendants Cannot Allege Pre-Indictment Delay When Defendants Acquiesced and Contributed to the Delay**

Section 3162(a)(2), the sanction provision for the seventy-day STA period, specifically states that "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendre shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2). Section 3162(a)(1), the sanction provision for the thirty-day STA period, contains no similar waiver provision. See United States v. Lewis, 980 F.2d 555, 560 (9th Cir. 1992)("A defendant seeking to dismiss a case for a claimed violation of the STA's speedy indictment provisions must move for dismissal prior to trial (although not necessarily before indictment) or he waives his right to dismissal under §

3162(a)(1)").

Nevertheless, despite this explicit waiver provision of Section 3162(a)(1), several courts have held that time may be excluded from the thirty-day STA indictment requirement when the defendant's conduct causes the delay:

> Where it is the conduct of the defendant or defense counsel which creates the delay, it is only the public's interest in a speedy trial which has been violated. Using the sanction of dismissal for such delay would be counterproductive because . . . the possibility of dismissal would serve as a powerful incentive for defendants and defense counsel to cause delay.
>
> United States v. Pringle, 751 F.2d 419, 434-435 (1st Cir. 1984), rev'd on other grounds by Henderson v. United States, 476 U.S. 321 (1986).

See also Williams v. United States, 123 F.Supp.2d 100, 103-104 (E.D.N.Y. 200)("The conclusion is inescapable that the explicit provision for waiver contained in that section has no application to pre-indictment delay. Section 3162(a)(1) addressing the sanction for pre-indictment delay does not include the waiver provision of 3162(a)(2). The absence of that provision, however, does not preclude a finding of waiver on another basis.") A defendant who actively participates in the delay should not be allowed to use the Speedy Trial Act as both sword and shield.  See Williams, 123 F.Supp.2d at 104. ("when a defendant seeks to use the STA as a shield and a sword, and treats the protection of the Act was designed to afford as a game of strategy by requesting delays and then attempting delays to demand dismissal of the indictment, his

behavior may amount to a valid waiver").

In this case, defendants not only failed to raise the issue of pre-indictment delay, but contributed to the delay. While GRULLON did pursue a probable cause/detention hearing with seven days of his arrest, MARTINEZ did not pursue one until July 15, 2004 (more than two months after his arrest). GERMOSEN did not pursue a hearing until August 2, 2004 (almost four months after his arrest). Each of these continuances was due in part to the unavailability of defense counsel.

Furthermore, following the government motion to detain upon the defendant's initial appearance in this case, the government's motion did not reach a disposition until July 15, 2004 for MARTINEZ and September 14, 2004 for GERMOSEN. This delay was due in most part the unavailability of defense counsel for hearings on the government's motion. Under Section 3161(h)(1)(F), the period of time between the government's motion and the resolution of the issue of detention should be excluded from the STA. See United States v. Noone, 913 F.2d 20, 27 (1st Cir. 1990)(The time elapsed pending disposition of motions for review of pretrial detention orders is excludable under section 3161(h)(1)(F). "We reject [defendant's] formalistic contention that only a written motion can activate the exclusionary provisions of subparagraph (h)(1)(F)"). Therefore, the amount of pre-indictment delay, while greater than thirty days, is not a great as defendants have alleged.

In sum, the defendants had the opportunity to object to the untimeliness of the return of the indictment and seek dismissal of the complaint, but failed to do so even though another defendant in this case moved to dismiss the complaint. Instead, the defendants (with the exception of GRULLON) sought several continuances of the resolution of their detention.

**B.   Under the Speedy Trial Act, the Charges in the Indictment Are Different From Those in the Complaint.**

When the government fails to meet the statutory requirements of the Speedy Trial Act, Title 18, United States Code, Section 3162(a)(1) provides:

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.

18 U.S.C. § 3162(a)(1)(emphasis added).

Although the First Circuit has not decided the issue, the Second, Third, Fifth, Sixth, Eighth and Ninth Circuit have clearly held that Section 3162(a)(1) has very limited application and should be strictly construed. See United States v. Gaskin, 364 F.3d 438, 451 (2nd Cir. 2004); United States v. Watkins, 339 F.3d 167, 174 & n. 5 (3d Cir.2003); United States v. Miller, 23 F.3d 194, 199 (8th Cir.1994); United States v. Nabors, 901 F.2d 1351, 1355 (6th Cir.1990); United States v. Giwa, 831 F.2d 538, 541 (5th Cir.1987);

9

United States v. Heldt, 745 F.2d 1275, 1280 (9th Cir.1984). "The statutory language requires dismissal only of 'such charge' against the individual contained in such complaint." Gaskin, 364 F.3d at 451 (internal quotations omitted). Furthermore, where the complaint charges remain pending for more than thirty days, "courts will not dismiss an untimely indictment pursuant to Section 3161(a)(1) if it pleads different charges from those in the complaint, and this applies *even if the indictment charges arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint.*" Id. at 451 (emphasis added)(internal quotations omitted). Several cases demonstrate this principle and applicability to this case.

In United States v. Gaskin, the defendant was charged in both the complaint and the indictment with conspiracy to distribute marijuana, but the indictment contained the additional allegation of drug weight. The court held that the charge in the complaint was not the same charge in the indictment since the indictment alleged the additional element of drug quantity,[5] even though the complaint and the indictment involved overlapping and identical facts. Id. at 453. Accordingly, the court held when an indictment adds elements to the government's burden of proof beyond those

---

[5] In United States v. Thomas, 274 F.3d 655, 663 (2d. Cir. 2001)(en banc), the Second Circuit held that drug quantity was an element of the offense.

10

required for the offense charged in the complaint, they replace the charges in the complaint with a different charge that are <u>not</u> subject to dismissal under Section 3162(a)(1) when no timely indictment has been filed. <u>Id.</u> at 456. The court furthermore ruled that normal <u>Blockburger</u> double jeopardy analysis did <u>not</u> apply to determination whether the charge contained in the complaint was the same charge contained the indictment. <u>Id.</u> at 454. This is because double jeopardy is constitutional and protects against successive prosecutions and cumulative punishment, while §3162(a)(1) is statutory and its concern is that charges pending against a defendant should be promptly processed. <u>Id.</u>

In this case, the charges contained in the complaint are substantially different than those alleged in the pending Second Superseding Indictment. The complaint filed against MARTINEZ and GRULLON on February 26, 2004 charged conspiracy to possess with intent to distribute and to distribute quantities of cocaine, in violation of 21 U.S.C. § 846. The complaint also alleged that the conspiracy began on or about January 1, 2003 and continued through the "present" (February 26, 2004) in Essex County, in the District of Massachusetts.

In contrast, the First Superseding Indictment expanded the time frame of the conspiracy. The First Superseding Indictment alleged the conspiracy began in January 2003 (two years earlier than the complaint) and continued until May 1, 2004 (the day of the

defendants' arrest). Significantly, the First Superseding Indictment incorporated the events of May 1, 2004 (when DEA seized approximately 50 kilograms of cocaine) into the conspiracy - events that had not taken place when the complaint was filed four months earlier. Moreover, instead of alleging that the conspiracy took place in Essex County, the First Superseding Indictment alleged that the conduct took place in Lynn, Danvers, Peabody, Salem, as well as locations in New York and Mexico. Finally, the First Superseding Indictment contained the additional allegation that the conspiracy involved at least five kilograms of cocaine which was not alleged in the complaint.

In the Second Superseding Indictment, while the allegations in the conspiracy count remained relatively the same, the new indictment also alleged several substantive counts which were not alleged in the either the complaint or the First Superseding Indictment. In particular, count six of the new indictment charges MARTINEZ with a substantive count of distribution of cocaine; count seven charges MARTINEZ with a substantive count of possession of a firearm in furtherance of a drug trafficking crime; and count eight charges GRULLON with a substantive count of distribution of cocaine.

The case of defendant GRULLON is even more straightforward. GRULLON was not charged with conspiracy in any criminal complaint. Instead, GRULLON was charged with possession with intent to

distribute cocaine. Furthermore, the substantive offense (Count Nine) now alleged in the Second Superseding Indictment (although arising from the same conduct in the complaint) involves a different offense (*distribution* of cocaine); an offense that requires different elements (the act of distribution vs. possession).

Accordingly, defendants cannot prevail on dismissal under Section 3162(a)(1) because the offenses now alleged in the pending Second Superseding Indictment are simply not the same "such charge" alleged in the complaint.

**C.   The Delay Was Reasonable**

Finally, even if the Court were to dismiss the complaint in this matter, such a dismissal would have no affect on the pending Second Superseding Indictment. Following indictment, the complaint as a charging document is a relic. In order to dismiss the pending indictment, the Court would have to find that *the complaint* should have been dismissed with prejudice. See United States v. Miller, 23 F.3d 194, 196 (8th Cir. 1994)("When a court dismisses a complaint outside the thirty-day period and is silent at to whether the dismissal is with or without prejudice, a subsequently filed indictment should be dismissed *only if the complaint should have been dismissed with prejudice*.")(internal quotations and citation omitted)(emphasis added).

The first sentence of Section 3162(a)(1) refers to dismissal

of such complaint.  The second sentence sets forth the factors that must be considered by the Court in determining whether "the case" should be dismissed with or without prejudice.   From the plain language and temporal sequence of this subsection, the Court must first dismiss the complaint and then decide whether that the entire case should be permitted to go forward.

In this case, Judge Swartwood has already made a judicial finding of no prejudice.  (See Docket No. 47).  This finding was based on the number of defendants in this case and the complex nature of the evidence.  In particular, Judge Swartwood recognized that "[t]he complex investigation involved informants, undercover agents, Title III intercepts, global positioning systems on multiple automobiles, surveillance of individuals and recorded and monitored controlled purchases of illegal narcotics."  Id. at 6. The Title III wire intercepts, significantly, involved wiretaps on twenty-one separate telephones for a period of almost a year which were for the most part in Spanish.

Accordingly, even if the defendants could obtain dismissal of the complaint in this case, such a dismissal would have no effect on the pending indictment unless it could be shown that the complaint should have been dismissed with prejudice.  Since there was judicial finding of no prejudice and reasonableness, the issue is therefore moot.

### IV. Conclusion

For all of the foregoing reasons, defendants' motion to dismiss for Speedy Trial violations should be denied.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

By:      /s/ Neil J. Gallagher, Jr.
           Neil J. Gallagher, Jr.
           Assistant U.S. Attorney
           One Courthouse Way
           Boston, MA
           (617) 748-3397

Date: April 21, 2005